**The STATE of Ohio, Appellee,**

**v.**

**BUTLER, Appellant.**

[Cite as *State v. Butler* (1989), 63 Ohio App.3d 157.]

Court of Appeals of Ohio,
Summit County.

No. 13966.

Decided May 31, 1989.

*Gregg A. Manes,* Assistant Prosecuting Attorney, for plaintiff.

*University of Akron School of Law Appellate Review Office* and *J. Dean Carro,* for defendant.

*Per Curiam.*

An assault complaint was filed with the Akron police. The victim alleged that Donald Butler had caused her physical harm. Without an arrest warrant, two police officers went to Butler's home. Butler confronted the officers. At some point in the dispute, Butler stepped outside the door of his home. The officers frisked Butler and placed him under arrest. The arrest report indicates Butler was charged with assault and disorderly conduct while intoxicated.

Butler tried his case to the court. Prior to commencing the case, the trial court dismissed the assault charge without prejudice. The prosecution called one witness concerning the disorderly charge, the arresting police officer. Butler testified in his own behalf. The trial court stated that the officer's testimony was consistent with the charges filed and found Butler guilty on the disorderly conduct charge.

Butler appeals from the trial court's judgment.

### Assignment of Error

"The State of Ohio failed to introduce evidence beyond a reasonable doubt to convict the appellant of disorderly conduct under R.C. 2917.11(B)(1). Thus, appellant was denied due process of law guaranteed by the Fourteenth Amendment to the United States Constitution and Art. I, § 10 of the Ohio Constitution."

Butler contends that the evidence which was presented through one police officer's testimony was insufficient to establish all the elements of disorderly conduct under R.C. 2917.11(B)(1). Butler also argues that circumstantial evidence must be irreconcilable with any reasonable theory of innocence in order to support a guilty finding.

"As to the claim of insufficient evidence, the test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. * * *'' *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720.

A brief portion of the record contains the essence of the police officer's testimony:

"Q. Okay. When did you first observe Mr. Butler?

"A. We went to his residence.

"Q. Which is where?

"A. I believe Ruth or Fern Avenue. One of those streets.

"Q. Is that in City of Akron, County of Summit and State of Ohio?

"A. Yes, sir.

"Q. What did you observe at his residence?

"A. Went to the door, knocked on the door. His relative of his, I believe his father came to the door. Initially he told us Mr. Butler was not there. Then as we were prepared to leave Mr. Butler then came forward and began berating us and asking us what we were doing there; we could clearly smell alcohol on his person from where we were standing outside the door.

"And Mr. Butler's actions were very antagonistic towards the officers. He used profanity towards the officers.

"Q. Was he offensive to you?

"A. Absolutely.

"MR. KODISH: Objection.

"THE COURT: Overruled.

"Q. Did he cause inconvenience, annoyance or alarm to you?

"MR. KODISH: Objection. It's leading.

"THE COURT: He may answer.

"A. Between himself and the door was his father and—

"MR. KODISH: Objection. Not responsive to the question.

"THE COURT: Mr. Manes will you ask him what happened? What was said? What was done?

"BY MR. MANES:

"Q. What did the Defendant say to you that day?

"A. We had told him we had a signed complaint against him for assault and then he began to state that no, this won't happen. I'm not going to be arrested. You're not coming in here to take me. Then he stepped outside the door and at that time Mr. Butler was frisked and placed under arrest.

"Q. Did he refuse to come outside?

"A. Initially.

"Q. And what was your response and what was his response?

"A. Well we informed him why we were there. We had a signed complaint on him. And the witnesses had stated that he had committed an assault. He was verbally very antagonistic. Telling us no, we weren't going to do this. We weren't going to take him out of his residence and we had no business being there and so on and so forth.

"Q. Did he inpede [sic] your efforts at all?

"A. Not physically but verbally by engaging us in needless debate and telling us what our job was and what our job wasn't.

"Q. How did he tell you what his job was or wasn't?

"A. We were wrong to be coming there to his place of residence at that hour bothering him with a bunch of BS. And that he used—he characterized the victim I guess as a bitch and had no business saying this about him and so on—it was just alot of rhetoric going back and forth, you know.

"\* \* \* \*

"Q. Did you observe anything about his physical appearance?

"A. Yeah, when he talked he used alot of slurring of his speech. Talked very loud. We had to tell him several times, you know, there's other people in the neighborhood that would like to sleep at this hour. You know, and he told us I don't give a damn. You know, your're disturbing me and—rhetoric of that nature."

The trial court found that the probative evidence and the reasonable inferences established that Butler violated R.C. 2917.11(B)(1) which states:

"(B) No person, while voluntarily intoxicated shall do either of the following:

"(1) In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities, which conduct the offender, if he were not intoxicated, should know is likely to have such effect on others[.]"

■ We disagree with Butler's contention that the trial court found the element of "voluntarily intoxicated" based upon circumstantial evidence.

The police officer testified that he smelled the odor of alcohol on Butler's person; Butler was loud; and Butler "used alot of slurring of his speech." This is not circumstantial evidence but direct evidence from which one could reasonably infer that Butler was intoxicated. Viewing those facts in the light most favorable to the prosecution, the trial court did not err in finding beyond a reasonable doubt that Butler was voluntarily intoxicated.

The evidence before the trial court was sufficient to establish that Butler violated R.C. 2917.11(B)(1). The police officer testified that Butler was loud, very antagonistic, used profanity, and was offensive. When viewed in the light most favorable to the prosecution, the trial court did not err in finding that Butler was in the presence of two or more persons and offended persons of ordinary sensibilities.

The assignment of error is overruled.

The judgment is affirmed.

*Judgment affirmed.*

BAIRD and REECE, JJ., concur.

CACIOPPO, P.J., dissents.

CACIOPPO, Presiding Judge, dissenting.

I respectfully disagree with the majority in this case. R.C. 2917.11(B)(1) requires a nexus between the voluntary intoxication and the conduct. The Committee Comment to R.C. 2917.11 explains this nexus requirement:

"The gist of the second part of the section is being intoxicated, and in a public place or while in the presence of others, engaging in conduct which the offender knows or should know is offensive, or else in public or private doing any act or creating any condition hazardous to the offender or another. Former law merely prohibited being found in a state of intoxication, whereas this section is aimed at particular conduct rather than at the condition. * * *

"The intoxication portion of this section is, in part, intended as a device for taking intoxicated persons into custody to permit their commitment and treatment under section 2935.33 and Chapter 3720. of the Revised Code."

In the case at bar, there is no evidence that if Butler were not intoxicated, he would have avoided the confrontation with the police officers. The record shows that the police officers did not have a warrant for Butler's arrest. The officers approached Butler at his home, late at night. Butler assured the officers that they could not enter his home. Butler did not impede the officers' efforts but verbally engaged them in "needless debate." Immediately upon stepping outside his door, Butler was frisked and placed under arrest.

The charge indicates that the arrest ended the confrontation. R.C. 2917.-11(E) states:

"(E) Whoever violates this section is guilty of disorderly conduct, a minor misdemeanor. If the offender persists in disorderly conduct after reasonable warning or request to desist, disorderly conduct is a misdemeanor of the fourth degree."

Butler was charged and found guilty of a minor misdemeanor.

The police officer did not testify as to what Butler said. The testimony was that Butler used profanity and was berating, antagonistic, and basically engaged in a lot of rhetoric. The trial court found this testimony established conduct which violates R.C. 2917.11(B)(1). I disagree.

Butler was inside his home at the time the confrontation occurred. If Butler engaged in conduct which violates R.C. 2917.11(B)(1), while within his own home, the record does not disclose such conduct. The lay opinion of one police officer, expressed in terms such as "rhetoric" and "antagonistic," is not sufficient to establish beyond a reasonable doubt that, but for his voluntary intoxication, Butler engaged in conduct he should know is likely to be offensive to persons of ordinary sensibilities. For these reasons I would reverse the trial court's decision.